BOND v. WILSON.

(Filed December 16, 1902.)

1. VERDICT—*Jury—Correction of Verdict—Negotiable Instruments Trial.*

   In an action on a negotiable instrument, where the jury allows credits thereon, but fails to find the dates thereof, it is not error for the trial court to direct them to retire and find the dates of the credits.

2. LIMITATIONS OF ACTIONS—*Negotiable Instruments—Payments—Endorsement.*

   In an action on a negotiable instrument a letter written by the defendant to the agent of the plaintiff, referring to an account between the defendant and agent of the plaintiff and showing the credits entered on the notes, is some evidence to be submitted to the jury that the credits were entered by the authority of the defendant.

ACTION by Lou M. Bond and others against J. W. Wilson, heard by Judge *W. B. Councill* and a jury, at June Term,

1902, of the Superior Court of BURKE County. From a judgment for the plaintiffs, both the parties appealed.

*John T. Perkins, A. C. Avery,* and *E. J. Justice,* for the plaintiffs.
*Thomas N. Hill,* and *Avery & Ervin,* for the defendant.

MONTGOMERY, J.   The defendant claimed several credits on account of payments made by him upon the notes sued on, but which were not endorsed upon the notes themselves. One was for the amount of $800, which the defendant averred he had paid for a mill wheel at the request of the agent of the plaintiffs; and another was for the payment of $240 freight bill on the wheel.   When the jury brought in the verdict, and it was read by direction of the Court, it was seen that while the jury had allowed the two credits, they had omitted to mention the dates the credits should bear.   Whereupon, his Honor directed the jury to retire and state in writing the date upon which the payment of the thousand and forty dollars for the mill wheel and freight should be entered.   They returned with their verdict, finding the credit as of the 1st of January, 1876.   The plaintiff excepted to the direction of the Court requiring the jury to amend their verdict, insisting that "the verdict as at first rendered was, in contemplation of law, a finding by the jury that the said $1,040 should be credited as of the 1st day of the term; that, instead of that, the Court interfered with the province of the jury and the rights of the parties in violation of the law in directing a finding of a specific time for entering said credit."   We are unable to see any just ground for complaint on the part of the plaintiff in the particular mentioned.   It was an imperfect verdict as at first rendered, but the finding of the date of the payment made it complete, and in no sense was it contradictory.   It

was the proper thing to have done, as well as the just thing, if the verdict was right in the first instance.    Juries are constituted for the very purpose of finding the material facts in a case, and when the Court discovers a failure on their part to find all of the material facts, it can direct the jury to retire and amend the verdict.    In *Wright v. Hemphill*, 81 N. C., 33, the jury returned their verdict to the Clerk and had separated for the night, and upon his Honor coming upon the bench in the morning, he ordered them to retire and complete their verdict.    That was an action for the recovery of personal property, and the verdict as handed to the Clerk fixed the property in the defendant, but there was an omission to find the value of the property and assess the damages for detention.    There, the Court said: "It is always proper for the Judge, when the jury return their verdict in open Court, to see that it is responsive to every material issue of fact submitted to them, and, if it be not so, to refuse to receive it, and direct a jury to retire and make up and bring in a complete verdict."    In *Willoughby v. Threadgill*, 72 N. C., 438, the jury returned a verdict to the Clerk at dinner recess in favor of the plaintiff for a sum certain, *without interest*. When his Honor resumed his sitting, the verdict as rendered and entered by the Clerk was brought to his attention, and the jury being in the court room, his Honor directed them to take their places, and after instructing them in the law as to the rule of interest, asked them to retire and to amend their verdict according to his instructions.    That course was approved by this Court.    Of course, as was said in that case, such a course would not be admissible in criminal actions. The other exceptions are without merit.

No Error.

CLARK, J., did not sit on the hearing of this appeal.

---
BOND *v.* WILSON.
---

DEFENDANT'S APPEAL IN SAME CASE.

MONTGOMERY, J.    This case is exactly like it stood when it was here before, 129 N. C., 387, except that the plaintiffs offered in evidence a certain letter written by the defendant to Samuel McD. Tate, after the commencement of this suit, bearing on the question of the alleged payments made by the defendant on the notes sued on, in addition to the evidence on that point at the first hearing.    The letter, dated at Raleigh, January 18, 1897, is in the following words and figures:

"When at home would have called to see you, but was too unwell.    I find the Bonds are largely overpaid; had no idea of the payments made by you, except the first, and did not know how much it was.    Is there anything you could possibly hold on to until it is adjudicated?    My books show cash paid for Walton House, $2,300.

"Credited by and paid at sale . . . . . . . . . . . .  $644.56
"Credited by amount entered on notes . . . . . .   509.94
"Credited by . . . . . . . . . . . . . . . . . . . . . . . . . . .   154.90
"Credited by . . . . . . . . . . . . . . . . . . . . . . . . . . .   310.03
"Credited by . . . . . . . . . . . . . . . . . . . . . . . . . . .   258.21

                                                        ―――――――

                                                        1,877.58."

The above was an account between Tate and Wilson (the defendant) of a fund in the hands of Tate belonging to Wilson—the proceeds of the sale of a piece of real estate in Morganton.    The second credit given to Tate of $509.94, Wilson admitted was placed by Tate on Wilson's notes due to the plaintiffs by direction of Wilson.    That credit was made on the 3d of June, 1884, on the $3,000.    The third credit of $154.90 was made, by direction of Wilson, by Tate on the $2,000 note on August 12, 1884.    The fourth amount,

$310.03, is endorsed as a credit on the $3,000, on September 11, 1890; and the fifth amount, $258.21, is endorsed as a credit on the $2,000 note, August, 1883.  The last two amounts, if entered on the bonds by Tate with the authority of the defendant, defeat the defendant's plea of the statute of limitations.  Considering the business relations between Tate and Wilson, we are inclined to the opinion that the letter was some evidence to be submitted to the jury of the payments. Several years had elapsed between the sale of the Walton property by Tate for the defendant, and the entries made by Tate (they were in his handwriting) on the notes; and even up to the letter, written in 1897, no protest had been made . against the disposition of the fund in Tate's hands, or inquiry made of the fund.   The evidence was submitted to the jury under proper instruction by his Honor, together with that of the defendant, and the weight of it was for them.   It was more than a scintilla or suspicion.  The instruction prayed for by defendant that the notes were barred by the statute of limitations on the evidence was properly refused.

No Error.

CLARK, J., did not sit on the hearing of this appeal.